IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE CROSBY      *Plaintiffs*, | : | |
| v. | : | CIVIL ACTION<br>NO. 20-5732 |
| WESTROCK PACKAGING, INC.;<br>WESTROCK SERVICES, LLC; and,<br>BROOK & WHITTLE, LTD<br>      *Defendants*. | : | |

**MEMORANDUM**

**Jones, II   J.**                                                                                            **September 29, 2022**

### I.      Introduction

Plaintiff commenced the above-captioned matter against Defendants, alleging she was unlawfully terminated from employment in violation of Title VII, as a result of complaints she made pertaining to discrimination she perceived against a transgender co-worker who became her boyfriend. Defendant Brook & Whittle, Ltd. has filed a Motion to Dismiss on the basis that they did not acquire the facility where Plaintiff worked until almost one year after her termination. For the reasons set forth below, said Defendant's Motion shall be denied.

### II.      Factual Background

Plaintiff, an adult female, began working for Defendants WestRock[1] on or around January 2016.[2] (Compl. ¶¶ 7, 9.) In September 2016, Defendants WestRock promoted Plaintiff

---

[1] For purposes of the instant discussion, this Court shall refer to Defendants WestRock Packaging, Inc. and WestRock Services, LLC as "Defendants WestRock."

[2] In 2014, Plaintiff was initially placed with WestRock's predecessor, Cenveo, through use of a Temporary Employment Agency. (Compl. ¶ 16.) Sometime between August 2015 and September 16, 2016, Defendant WestRock Entities purchased the Cenveo facility. (Compl. ¶¶

1

to the position of Human Resources Coordinator.  (Compl. ¶ 18.)  In 2018, Plaintiff began working with Michael "Elizabeth" Jablonski, who was assigned to the Printing Department at Defendants' facility.  (Compl. ¶ 22.)  Jablonski is an adult transgender male (biologically born female), who had undergone medical transitioning and was in the process of legally changing his name from Elizabeth Jablonski to Michael Jablonski at the time Plaintiff filed her lawsuit.  (Compl. ¶ 23.)   From the onset of his employment with Defendants WestRock, Jablonski presented himself as a man; he wore men's clothing, had a mustache and beard, and preferred to be addressed as "Michael" or the nickname "Jabo," as well as the male pronouns "he/him."  (Compl. ¶ 24.)   Plaintiff alleges that since the time of Jablonski's hire, Plaintiff observed Defendants WestRock's management begin to subject Jablonski to discrimination, hostility, offensive and unwelcome comments, and disparate treatment because of his transgender status and not conforming to typical gender stereotypes for his biological gender (female).  (Compl. ¶ 25.)   Examples of this alleged treatment included intentional use of incorrect pronouns, assigning Jablonski the derogatory nickname of "Jabo She," exhibiting "obvious disdain for transgender individuals," and commenting on Jablonski's use of a single restroom near the front office.  (Compl. ¶ 25.)

In late 2018, Plaintiff and Jablonski privately began dating.  (Compl. ¶ 26.)   At the time, Defendants WestRock did not have any policies regarding workplace relationships.  (Compl. ¶ 26.)  When Plaintiff would see Jablonski after work, he was often upset and would be crying about having to go back to work and be subjected to the "offensive and unfair treatment."  (Compl. ¶ 27.)    After several months of these observations, Plaintiff disclosed her relationship

---

17-18.)  Plaintiff alleges the "employer" name appearing on her paystubs and W2s from January 2016 through June 2019 was WestRock Services, LLC.  (Compl. ¶ 9.)

to her supervisor in the Human Resources Department on March 26, 2019 and alerted said Supervisor to the allegedly offensive and discriminatory conduct, as well as the effect it was having on Jablonski. (Compl. ¶ 28.) Plaintiff's supervisor confirmed there was no policy against workplace relationships but nevertheless asked Plaintiff and Jablonski to prepare a statement regarding their relationship, which they did. (Compl. ¶ 29.) Plaintiff's supervisor also informed her she would launch an investigation into the alleged mistreatment of Jablonski. (Compl. ¶ 29.)

Subsequent to March 26, 2019, Plaintiff never received any information about the investigation. (Compl. ¶ 30.) Instead, she was terminated from employment with Defendants WestRock on June 11, 2019 on the bases that: (1) she edited Jablonski's timecard for vacation/punch out time, which Defendants "erroneously" deemed to be fraud; (2) she was insubordinate in attempting to correct Jablonski's supervisors about the purposeful use of incorrect gender pronouns when referring to Jablonski; and (3) she was in a relationship with Jablonski. (Compl. ¶ 31.) Plaintiff avers: (1) it was her job to edit timecards, which she had done for several other non-transgender employees without incident on many occasions; (2) it was not insubordination for Plaintiff to ask Jablonski's management team to refer to him by his correct pronouns; and (3) other non-transgender employees have had romantic, marital and/or other relationships at work and were not terminated for same. (Compl. ¶ 32.)

Nearly eleven (11) months after Plaintiff was terminated from employment by Defendants WestRock, the facility where Plaintiff had worked was acquired by Moving Defendant Brook & Whittle Limited (hereinafter "B&W").[3] (Compl. ¶ 19.) Plaintiff alleges Defendant B&W is liable under the Successor Liability Doctrine because: it has maintained the

---

[3] Specifically, said facility was acquired by B&W on or about May 6, 2020. (Compl. ¶ 19.)

3

entire continuity of operations of Defendants WestRock without interruption; the facility at which Plaintiff worked is still an operating facility with the same clientele, operations and employees it had while under ownership of Defendants WestRock; staff members of Defendants WestRock maintained their employment and roles after the facility was acquired by Defendant B&W; and, Defendant B&W operates the location where Plaintiff worked with substantially the same equipment that was used during Defendants WestRock's ownership. (Compl. ¶ 11.)

### III.     Standard of Review

When reviewing a Rule 12(b)(6) motion, district courts must first separate legal conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be discarded, and well-pled facts given the deference of truth. *Id*. at 210-211. Courts must then determine whether the well-pleaded facts state a "plausible claim for relief." *Id*. at 211.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231).

**IV.     Discussion**

Plaintiff has named B&W as a defendant on the basis of its purchase of Defendants WestRock's facility in Croydon, Pennsylvania in May 2020. This was the facility where Plaintiff and Jablonski worked before Plaintiff's termination from employment the year prior.

The successor liability doctrine in this context is as follows:

> "In general, in the context of employment discrimination, the doctrine of successor liability applies where the assets of the defendant employer are transferred to another entity." *Rego v. ARC Water Treatment Company of PA*, 181 F.3d 396, 401 (3d Cir. 1999). "Ordinarily, however, absent a contractual obligation to do so, a successor corporation does not assume the liabilities of its predecessor." *Id*. When that is the case, "[the Court looks] to less specific controlling legal principles which recognize that the successor will be liable if it is a 'mere continuation' of its predecessor." *Id*. at 402. In an employment discrimination case, it has been said that a court ought to consider three principal factors before it makes a successor liability determination. They are: "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly." *Id*.

*Frankenfield v. Media Pizza, Inc*., Civil Action Nos. 03-2822 & 03-2824, 2011 U.S. Dist. LEXIS 92365, at *5-6 (E.D. Pa. Aug. 17, 2011).

"Successor liability is based upon equitable principles with an emphasis on the second and third factors listed above." *Fredriksen v. Consol Energy Inc*., 2:18-CV-00379, 2019 U.S. Dist. LEXIS 81193, at *8 (W.D. Pa. May 14, 2019). "The 'notice' factor depends on whether [the successor] had 'notice of the specific discrimination claim in question at the time it commenced operation of the [facility]. *Fredriksen*, 2019 U.S. Dist. LEXIS 81193, at *10-11. As for the third factor, the focus is whether 'the original company has any inability to provide adequate relief directly to [the plaintiff].' *Id*. at *11." *Henley v. Brandywine Hosp., LLC*, Civil Action No. 18-4520, 2021 U.S. Dist. LEXIS 60504, at *12 (E.D. Pa. March 30, 2021). "The policy underlying the doctrine is 'to protect an employee when the ownership of his employer

5

suddenly changes.'" *Rego*, 181 F.3d at 401 (quoting *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996)).

As discussed above, the first factor to be considered by this Court is "continuity in operations and work force of the successor and predecessor employers." *Frankenfield*, 2011 U.S. Dist. LEXIS 92365, at *6. Plaintiff clearly and sufficiently alleges facts to support this factor at Paragraph 11(a)-(d) of her Complaint, yet Defendant B&W does not speak to the issue in either its Opening Brief or Reply. As such, Defendant B&W has waived this issue for purposes of the instant Motion. *See McDonald v. SEIU Healthcare Pa.*, Civil Action No. 1:13-CV-2555, 2014 U.S. Dist. LEXIS 130670, at *16 (M.D. Pa. Sept. 18, 2014) (failure to brief issue raised in motion to dismiss renders the issue waived). With respect to the second factor, notice to the successor employer of its predecessor's legal obligation[,]"[4] neither side addresses same. Plaintiff's Complaint does not contain any allegation(s) that Defendant B&W had such notice and said Defendant's briefing on the instant motion does not deny it had such notice. Finally, Plaintiff does not allege in her Complaint nor contest in her Response, that Defendants WestRock do not have the ability to directly provide adequate relief.

Because these three issues are not mutually exclusive but instead, are all critically necessary in order for the court to properly conduct its assessment, Defendant's Motion must be denied and Plaintiff shall be granted leave to amend her Complaint.

---

[4] *Frankenfield*, 2011 U.S. Dist. LEXIS 92365, at *6.

## V.     Conclusion

For the reasons set forth hereinabove, Defendant B&W's Motion to Dismiss shall be denied without prejudice.  The parties shall engage in limited discovery to obtain the necessary information referenced above and Plaintiff shall be granted leave to amend her Complaint thereafter.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II     J.